IN THE MATTER OF THE APPLICATION OF THE BELVIDERE-DELAWARE RAILROAD COMPANY ET AL. FOR A SUMMARY DETERMINATION AS TO THE TAXATION OF CERTAIN LANDS IN THE CITY OF TRENTON.

Argued June 10, 1907—Decided November 11, 1907.

1. *Query:* Whether the summary review in matters of double taxation of the property of a railroad or canal company, as prescribed by section 28 of the Tax law of 1888 (*Gen. Stat., p.* 3332, *pl.* 239), may properly be invoked by a railroad company for the purpose of determining the question whether certain property used for railroad purposes is "main stem" or "second-class" railroad property?

2. Proofs upon the question whether certain property of a branch railroad is assessable by the state board of assessors as main stem, or assessable, under *Pamph. L.* 1906, *p.* 571, by the local assessors as second-class railroad property, having been submitted

upon the reasonable assumption that the matter would be decided upon the basis of the rule laid down by this court in the two cases of *Jersey City* v. *Board of Assessors*, 44 *Vroom* 164, 170, and the Court of Errors and Appeals having (since the argument herein) reversed the judgment of the Supreme Court in the second of those cases, laying down a different rule for determining whether the land occupied by the roadbed of a branch railroad is to be assessed as main stem or as second-class property—*Held*, that the present application should be dismissed, without prejudice to the right of the railroad companies to take further proceedings for review of the disputed taxes.

In the matter of double taxation.

Before Justices HENDRICKSON, PITNEY and TRENCHARD

For the applicants, *Vredenburgh, Wall & Carey*.

For the state, *Robert H. McCarter*, attorney-general.

For the city of Trenton, *Charles E. Bird*.

The opinion of the court was delivered by

PITNEY, J. This is an application for a summary determination as to the proper mode of taxing certain railroad property in the city of Trenton, including the main track and roadbed and also some side tracks of a railroad that is known as the Enterprise branch of the Belvidere-Delaware railroad. This property was assessed for the year 1906 by the state board of assessors as "main stem," and assessed for the same year by the taxing authorities of the city of Trenton as "second-class" railroad property.

The jurisdiction of this court is invoked by the railroad company in the manner prescribed by section 28 of the Tax law of 1888 (*Gen. Stat., p.* 3332, *pl.* 239), which prescribes "that in case any property of any railroad or canal company, which has been or shall hereafter be in any year assessed by the local authorities of any taxing district, has been or shall be also assessed by the state board of assessors as property used for railroad or canal purposes, the Supreme Court, or any

three justices thereof to be assigned by the Chief Justice, shall determine in a summary manner the character of the property, and whether used for railroad or canal purposes, and by which assessors the same has lawfully been assessed, which determination shall be made whether the taxes in question have been paid or not, and whether a *certiorari* to review either assessment has been granted or not," &c.   The section goes on to provide that depositions may be taken for use on the hearing, that the justices may, if they see fit, view the property in dispute, to guide them in their decision, and that the judgment of the court shall direct the cancellation or reduction of either assessment, as the character of the property may require, and shall make such order respecting the return to the taxpayer of any tax that may have been paid to the state or to any taxing district not entitled thereto, as the court shall deem just.

This section was manifestly intended as a convenient (but not exclusive) substitute for a review by *certiorari,* and enables the court to deal with the matter the same as if both taxes were brought under review by the common law writ.   The statute goes further, in that it allows the review, notwithstanding the taxes have been paid (a *certiorari* would hardly be allowed after their payment), expressly permits a view of the property, and makes provision for a return of moneys paid under an improper assessment.

But it will be observed that the proceeding thus provided for was, in its origin, intended merely to determine whether the property doubly assessed was used for railroad or canal purposes.   If it was so used, then, whether it were "main stem" or "second-class" property, it was taxable by the state board of assessors under the act of 1888; if not so used, it was by the terms of that act taxable by the local assessors the same as the taxable property of other owners in the same taxing district.   Until the year 1906 the assessment of all property used for railroad or canal purposes was under the jurisdiction of the state board of assessors.

But by the supplement of May 18th, 1906, to the Railroad act of 1888 (*Pamph. L.* 1906, *p.* 571), it was provided that the taxes upon what is known as "second-class" railroad or

canal property shall be assessed and taxed in each taxing district in the same manner as other property is assessed and taxed.

The taxes assessed upon the Enterprise branch by the local authorities of the city of Trenton for the year 1906 were assessed under the authority of this act. Admittedly all the property in question is used for railroad purposes, and the question at issue is whether it is "main stem" or "second-class" property.

We question whether, for the solution of such a controversy, the railroad company can properly invoke the procedure laid down in section 28 of the act of 1888.

But, without determining this question (which was not discussed in the argument), there is another ground upon which we think the present application should be dismissed. The proofs herein were submitted upon the reasonable assumption that the case would be decided upon the basis of the rule laid down by this court in the two cases of *Jersey City* v. *Board of Assessors*, 44 *Vroom* 164, 170; and it was not until after the present case was argued that the Court of Errors and Appeals announced its decision (not yet reported,) reversing the judgment of the Supreme Court in the second of those cases, and laying down a different rule for determining whether the land occupied by the roadbed of a branch railroad was to be assessed as "main stem" or as "second-class" property. The testimony submitted in the present case is not such as to enable us to apply the distinction established by the Court of Errors and Appeals in the Jersey City case.

Under the circumstances the present application should be dismissed, but without prejudice to the right of the railroad companies to file a new application under section 28 (if they are advised that the case can be properly dealt with under that section), or to apply for writs of *certiorari* to review the disputed taxes. The parties will then be enabled to intelligently prepare and submit their proofs in view of the grounds of distinction between "main stem" and "second-class" property adopted by the court of last resort.

The dismissal will be without costs.